

In The United States District Court
For The Western District of Virginia
Roanoke Division

CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

NOV 19 2020

JULIA C. DUDLEY, CLERK
BY: _____
DEPUTY CLERK

GARY HANCOCK
Plaintiff

V.                          Civil Action No.:


LIEUTENANT LAFAVE; (NURSE) PARKER
R. SLUSS; LIEUTENANT M. CHILDERS;
KELLY; P. CORBIN; J. EWING;
C. STAPLETON; UNNAMED DEFENDANTS
Defendants


## COMPLAINT WITH JURY DEMAND


### Introduction


This is a civil rights action filed by Gary Hancock, a federal prisoner, for damages under Bivens v. Six Unknown Named Agents of ~~the~~ Federal Bureau Of Narcotics, 403 U.S. 388, 404-05, 91 S. Ct. 1999 (1971), alleging excessive use of force and deliberate indifference to plaintiff's right to protection and personal safety, in violation of the Eighth Amendment To the United States Constitution. And Denial of Medical Treatment/Care.

## Jurisdiction

2

1. The Court has jurisdiction over the plaintiff's claims of violation of Federal Constitutional rights under 28 U.S.C. § 1331

## Parties

2. The plaintiff, Gary Hancock, was incarcerated at the United States Penitentiary in Lee County Virginia during the events described in this Complaint.

3. Defendants LaFave and M. Childers are both Correctional lieutenants that make rounds in the Special Housing Unit (S.H.U.), at U.S.P. Lee. Both sued in individual Capacities.

4. Defendants R. Sluss, Kelly, P. Corbin, J. Ewing, and C. Stapleton are all Correctional officers employed at U.S.P. Lee (in the S.H.U.). They are sued in their individual Capacities.
   (NURSE) Parker is U.S.P. Lee Medical staff. He is sued in his individual Capacity.

3

5. Unnamed Defendants include all U.S.P. Lee Staff found to have participated, directly or indirectly, in the excessive force suffered by plaintiff while in physical/ambulatory restraints. All unnamed defendants are sued in their individual capacities. Also those involved in denying plaintiff Medical Care.

## Facts

6. On March 26, 2020, plaintiff and his Cell-Mate Guadalupe Jurado #77424-380 were "Squared-up" in fighting stance when Correctional Officer (C.O.) Cook walked past and noticed us prepared to fight.

7. C.O. Cook then ordered us to submit to restraints/cuffs and we reluctantly complied; both afraid of being assaulted while in cuffs.

8. Plaintiff and his cellmate were taken to the Lieutenants office where they were questioned by defendants LaFave and Sluss, both being supervisory staff that night.

4.

9. Plaintiff and his cellmate explained to LaFave and Sluss that they could not get along as cellmates and that they needed a cell change to avoid a physical altercation. Plaintiff told defendants LaFave and Sluss that he feared for his safety if placed back in the cell with Jurado.

Lt LaFave's answer to plaintiff's request for a protective cell-move was "You had better fight, fuck, or get along. We're not moving you." Defendant Sluss stood there and concurred with LaFave.

10. Plaintiff pleaded with LaFave and Sluss for several more minutes, telling them he can't go to sleep in that cell now that he and his cell-mate were at odds. Both defendants threatened plaintiff with being tortured in physical restraints if he refused his cell assignment.

LaFave and Sluss ordered staff to return us to our cells.

5.

11. The plaintiff and his cell-mate, Jurado, remained in this insanely high-tension cell situation for four days. On 3/30/20 plaintiff had to defend himself in a physical altercation between his cell-mate Jurado and himself. Plaintiff suffered physical injuries of bruising and swelling of the face, multiple cuts/lacerations inside his mouth, being sprayed in face with pepper spray (which burned entire upper body for a week), and a back and hip injury (resulting from a fall while fighting) that medical staff refused to document and treat.

12. On wed April 1, 2020 between 6:30-7:30am ~~Approximately within the next 48 hours~~) ~~after the physical altercation~~, the plaintiff gave defendant Parker a "sick-call" request complaining of severe back and hip pain. Parker refused to document and treat the injury. Plaintiff suffered this pain for about two months after the altercation. This pain was mentioned to parker on other occasions, who refused

to evaluate plaintiff's injuries and simply told him to buy pain pills from commissary. Another sick call was given to Parker on 4/6/2020 at am sick-call.

13. On 3/31/2020 plaintiff was given an "Incident Report" for the altercation.

14. Defendants showed deliberate indifference to plaintiff's right to personal safety by forcing him back in the cell with Jurado after staff witnessing and being told that physical violence was emminent. See Farmer v. Brennan, 511 U.S. 825, 833 (1994) ("Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society.") (also applicable to excessive force in following claim).

15. Prior to injury assesments being done on camera, plaintiff was warned (and threatened) that he must not say anything while on camera.

16. In the Discipline Hearing Officer Report

7

dated 8/28/2020, for Incident Report Number 3384367, detailing the Hearing Officer's findings for the incident report dated 3/30/2020, "Documentary Evidence" includes: "- One Bureau of Prisons Clinical Encounter and photographs of injuries for Hancock # 56765-037, dated March 30 2020 ".

17. After the altercation with Jurado, Plaintiff was taken to the S.H.U. Lieutenant's office where defendant Sluss angrily ridiculed plaintiff for the altercation and told plaintiff "now I'm going to put you with somebody who's gonna take your ass". Sluss threatened plaintiff with sexual assault by another inmate, and placed plaintiff in the cell with Nathen Davis → a 280 pound mentally ill inmate who has had physical altercations with multiple cell-mates in Lee County S.H.U. Sluss purposely put plaintiff in an unsafe situation. Plaintiff immediately began having problems with Davis.

8

## Misuse of Force

18. The problems between inmate Davis and plaintiff were so bad that plaintiff immediately began giving written requests to S.H.U. lieutant. Hamilton and the Warden and Sluss asking for a cell change to avoid physical violence. All requests for cell move were ignored. Hamilton and Sluss showed that they enjoyed the fact that Davis was making plaintiff miserable — They laughed at his requests.

19. On 4/23/2020 the problems between plaintiff and Davis came to a head and plaintiff asked defendant Kelly for a cell move, emphasizing the severity of problem. Kelly said he'd ask Sluss. ~~~~

20. Later Kelly told plaintiff Sluss would not move him and plaintiff told Kelly "if you don't get me out of this cell I'll kill myself." Now, because of protocol, plaintiff had to be removed from the cell with Davis (who'd already sent

9

One inmate to the Emergency Room (off-site) from a fight)).

21. On the way to "Suicide Watch" R. Sluss told the plaintiff, "Now you're going in restraints for 16 hours when you get back." And this struck terror into the plaintiff because U.S.P. Lee S.H.U. staff are constantly beating prisoners while shackled and cuffed in "restraints"; Screams of prisoners being tortured frequently being heard throughout the night.

22. Plaintiff spent the night on suicide watch and in the morning was visited by a very rude and disrespectful psychologist Dr. ~~Baily~~ Bailey who insisted that he was not suicidal and ordered him returned to S.H.U.

23. Upon returning to S.H.U. Lt. Lively ordered that plaintiff be placed in restraints (in accordance with U.S.P. Lee

10

S.H.U. practice of torturing inmates for going to suicide watch). Lt. Lively is to be included with Unnamed Defendants at a later date.

24. Plaintiff was placed in "Three-Point" restraints, with shackles, waist chain, cuffs (with ifamous torture device reffered to as the "black-box") cuffed to waist chain. All restraints were purposely placed too tight, to torture plaintiff. This took place on 4/24/2020 at approximately 10:00 am.

25. "Restraint Checks" were conducted every two hours by a team of S.H.U. staff and the Lieutenant on duty, which was Lively during the day shift. The restraints were too tight but plaintiff was not physically abused until next shift when defendant LaFave was Shift Lieutenant.

26. Prior to the first restraint check led by LaFave, LaFave and his team ordered me

11

to the back of the cell, on my knees against the wall. I complied as I was already suffering greatly from the restraints I already felt were torturously tight.

LaFave's team opened the cell door and I looked over my shoulder to see defendant Kelly running at me with a curved, plexiglass riot shield designed to pin a prisoner against the wall. Kelly hit me hard enough with the shield to knock the wind out of me — this force was unnecessary as I was totally compliant.

27. The other officers grabbed my limbs to hold me in place and dug their fingers into my flesh, I assume to anger me to resistance.

28. LaFave entered and began telling me how stupid I was as he twited on my already hurting wrists and the cuffs. His first comment was "Oh, who did this? This isn't tight enough." LaFave

12.

then ordered his staff to tighten the restraints. They stood me up, warned me that if I tried anything they'd beat me, and removed the restraints to tighten them. The belly chain was pulled so tight that it pinched my flesh. The cuffs and shackles were squeezed so tight as to cutt of my circulation. By the next restraint check two hours later my finger tips were turning blue.

29. The excessive force became worse with each restraint check. I was rammed by Kelly harder and harder and held against the wall with such force as made it hard to breathe and pushed my torturously tight cuffs into the wall. I screamed in agony every time.

30. LaFave and Childers twist my wrists into contortions that grind my tenderized flesh against the steel cuffs that bring involuntary tears of rage to my eyes. They ridicule me for "crying like a little bitch."

13

31. The officers behind me, as I was on my knees, stepped on my bare feet with their work-boots, with a grinding motion. My first three toenails on both feet turned black and eventually fell off. Because they were behind me, I dont know which officers were standing on my feet.

32. Later into the night, as the abuse continued, LaFave forced me to sing racist songs louldly so other prisoners could hear. The lyrics to the song he made me sing went along the lines of " Nigger in the field, Nigger in the ditch, I'm a cotton pickin' Nigger... " (I cant rember exact lyrics)

33. During the 2nd or 3rd restraint check on LaFave's, shift, the accompanying nurse Mr. Caudill made staff loosen my cuffs as my blood oxygen reading was low according to device on my finger. Cuffs were loosened a click or two,

still tight enough to be considered torture.

34. Plaintiff still has visible scars around his midsection from the tight chain links around his waist/abdomen. There is no penological justification for placing a chain so tight around a prisoner's abdomen, in the year 2020, where the prisoner is permanently scarred.

35. After hours in the tight belly chain, the plaintiff couldn't take a full breath without excruciating pain from the abdominal chain.

36. Plaintiff complained to defendants J. Ewing and P. Corbin that he couldn't breath with the abdominal chain, they mocked and ridiculed him.

37. There was an X-Ray machine directly outside the big observation window of the cell. Officers kept the log there and made

entries as to my status every 15 minutes. This log book was close enough for me to read their (falsified) entries.

38. Primarily Ewing and Corbin kept writing statements saying the plaintiff told them to "Fuck off." First of all, I'm from the City (Washington D.C. Metro Area). I dont say "Fuck off." That's ~~████~~ Mountain Folk talk. All of these entries ~~&~~ Making Me appear combative were falsified. (Please excuse profanity in complaint, needed to paint clear picture of events).

39. For the record, no video injury assesment was done _after_ the restraints were taken off. A video injury assessment was done _before_ I was put in restraints and I was told I'd better not say anything on camera. This is likely a Cover-up effort and defendants will show this video and say "see? he wasn't hurt." and misrepresent facts about when video was recorded.

16

40. I do not believe that Nurse Mr. Caudill documented in my medical records that circulation was obstructed by cuffs and he ordered them loosened. Medical Staff openly assist in cove-up efforts.

41. Body-Cameras should be mandatory equiptment for all Federal prison staff- with audio.

42. Plaintiff still has scars visible on wrists from cuffs.

43. Plaintiff was abused every restraint check on laFave's shift (framed rammed with shield, Cuffs pushed and pulled with excessive force, wrists twisted to cause pain, bare feet stomped on and smashed, Made to sing racist songs, Ankle restraints stepped on to cause torture, etc). LaFave would twist plaintiff's wrists saying Mockingly "does this hurt? How about this?"
 Due to my reputation for filing civil actions, LaFave told Me nastily "if you're

going to sue me, Make sure you spell My name right." This one statement embodies the attitude of all F.B.O.P. Staff nationwide. There is no accountability — the B.O.P. doesn't hold its staff accountable for policy and Constitutional violations. (See Exhibit 1, Affidavit of Witness Darrell Lee Who suffered similar torture). ~~Claims For Relief~~

## Exhaustion of Administrative Remedies

44. Plaintiff has been denied forms to exhaust remedies, about these issues, at U.S.P. Lee and here at U.S.P. Thomson. Written request for grievance forms were given to Thomson staff, telling them they were for events at U.S.P. Lee. No forms were supplied.

Emails were sent to Unit Team Supervisor (Case Management Coordinator/ C.M.C.) for grievance/BP-8 forms. He replied that Unit Team was notified of My request. These emails remain in the prison Computer

System for verification.

Current law states that plaintiff must only ehaust such remedies as are "Available" and prison staff making forms unavailable removes the exhaustion requirement.

You would think that prison staff would make forms readily available to stop arguments such as these, but they don't.

~~Claims For Relief~~

### Miscellaneous Facts

45. Abuse continued into the Midnight shift, Next lieutenant made plaintiff sing as ~~also~~ well and restraints were not loosened.

46. Plaintiff was in too much pain to eat in restraints- it was impossible.

47. Plaintiff was removed from restraints during the midnight shift.

### Claims For Relief

48. The actions of Lieutanant LaFave

in leading a team of officers to assault plaintiff in restraints, and to use physical force against the plaintiff without need or provocation, and in failing to intervene to prevent misuse of force, were done maliciously and sadistically and constituted cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution.

49. The actions of Lt. LaFave and R. Sluss in forcing plaintiff to return to cell with inmate Jurado after staff witnessing Jurado and plaintiff prepared to inflict physical harm on one another, and after being told by plaintiff that he feared for his safety in the cell with Jurado; and the resulting injuries suffered by the plaintiff as a result of the physical altercation with Jurado all constituted cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution.

50. The actions (failure to act) of defendant Parker in failing to provide medical assessment

and treatment to the plaintiff for his injuries, resulting from the physical altercation, constituted Cruel and Unusual Punishment in Violation of the Eighth Amendment To The United States Constitution.

51. The actions of Lt. Childers in using excessive force when checking plaintiff's restraints, solely to cause pain, and in failing to intervene to prevent the misuse of force, were done maliciously and sadistically and constituted Cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution.

52. The actions of defendants Kelly, P. Corbin, J. Ewing, C. Stapleton, and Unnamed Defendants in using physical force against the plaintiff without need or provocation, or in failing to intervene to prevent the misuse of force, were done maliciously and sadistically and constituted Cruel and unusual Punishment in Violation of the Eighth Amendment of the United States Constitution.

21

## Relief Requested

WHEREFORE, Plaintiff requests that the Court grant the following relief:

A. Issue a declatory judgement stating that:
   1. The actions of all defendants in refusing to ensure plaintiff's personal safety, in refusing plaintiff Medical care for injuries, in physically abusing plaintiff while in restraints, and in failing to take actions to curb the physical abuse of prisoners violated plaintiff's rights under the Eighth Amendment to the United States Constitution.

B. Award Compensatory Damages in the following amounts:
   1. $100,000 Jointly and Severally against defendants Lt. LaFave and R. Sluss for the physical, emotional, and Constitutional injuries Sustained by the plaintiff as a result of being forced back in a cell with inmate Jurado.

   2. $100,000 Jointly and Severally against

defendants Lt. LaFave, & Lt. M. Childers, Kelly, P. Corbin, J. Ewing, C. Stapleton, and Unnamed Defendants for the physical, emotional, and Constitutional injuries sustained by the plaintiff as a result of plaintiff being physically and mentally abused/tortured while in physical restraints (and failing to take actions to stop abuse).

3. $75,000 against defendant Parker for refusing to acknowledge plaintiff's sick-call requests given to him, and failing to ensure medical care was provided for injuries complained of.

C. Award Punitive Damages in the following amounts:

1. $20,000 each against defendants LaFave, Childers, Sluss, Kelly, Corbin, Ewing, Stapleton, and Unnamed Defendants.

2. $20,000 against Defendant Parker.

23

D. Grant Such other relief as it May appear that plaintiff is entitled.

I, Gary Hancock, declare under penalty of perjury, Persuant to 28 U.S.C. § 1746, that the facts alleged in this complaint are true and Correct.

Respectfully Submitted

Executed on
11/10/2020

Gary Hancock

Gary Hancock 56765-037
A.U.S.P. Thomson
P.O. Box 1002
Thomson, IL  61284

INMATE NAME _Gary Hancock_
REGISTER NUMBER _56765 037_
UNITED STATES PENITENTIARY
P.O. BOX 1002
THOMSON, IL 61285

Legal
Mail

INMATE
IDENTIFICATION
CONFIRMED

QUAD CITIES IL PDF 612
MON 16 NOV 2020 PM

Clerk, United States District Court
210 Franklin Rd., Rm 540
Roanoke, VA 24011

RECEIVED

NOV 19 2020

USDC Clerk's Office
Mail Room

FEDERAL
PO
THOMSON

The enclosed

this facility has jurisdiction you may wish to
for further information or direction. If the
pondence for forwarding to another address please
return the enclosed materials to the above address.