# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| **GARY HANCOCK,** | ) |
| Plaintiff, | ) Case No. 7:20CV00687 |
| v. | ) **OPINION** |
| **LIEUTENANT LaFAVE, ET AL.,** | ) JUDGE JAMES P. JONES |
| Defendants. | ) |

*Gary Hancock, Pro Se Plaintiff; Krista Consiglio Frith, Assistant United States Attorney, Roanoke, Virginia, for the Defendants.*

Gary Hancock, a federal inmate proceeding pro se, filed this civil rights action under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). Hancock alleges that various defendant prison officials failed to protect him from violence by two cellmates, used excessive force against him, or failed to provide medical care for resulting injuries, in violation of his Eighth Amendment rights. After review of the record, I conclude that the defendants are entitled to summary judgment based on Hancock's failure to exhaust administrative remedies before filing this case as required under 42 U.S.C. §1997e(a).

I.    BACKGROUND.

At all times relevant to Hancock's claims in this case, he was incarcerated at the United States Penitentiary Lee County ("USP Lee") in Jonesville, Virginia.[1] Hancock alleges that on March 26, 2020, he and his cellmate, Guadalupe Jurado, stood "squared up" ready to fight. Compl. 3, ECF No. 1. An officer noticed their actions and escorted them to the office of Lt. LaFave. The cellmates told officers that they "needed a cell change to avoid a physical altercation." *Id.* at 4. The officers denied this request. On March 30, 2020, Hancock allegedly "had to defend himself in a physical altercation" with Jurado and suffered various physical injuries. *Id.* at 5. He contends that defendant Parker refused to document or treat these injuries appropriately.

After the March 30, 2020, altercation, officers escorted Hancock to the Special Housing Unit ("SHU"). Defendant Sluss allegedly threatened to put Hancock "with somebody who's gonna take your ass." *Id.* at 7. Hancock was assigned to share a cell with inmate Nathen Davis, who allegedly weighed 280 pounds and had a history of assaulting past cellmates at USP Lee. Officials allegedly ignored Hancock's initial requests to be moved away from Davis for fear of violence. Finally, on April 23, 2020, Hancock wrote to Defendant Kelly, "[I]f you don't get me out of this cell

---

[1] By the time Hancock filed this action, officials had transferred him to USP Thomson in Illinois, where he is currently confined.

I'll kill myself." *Id.* at 8. Officials then moved Hancock to suicide watch. A psychiatrist examined Hancock the next day and released him from suicide watch. Officers returned Hancock to the SHU, where they placed him in three-point restraints (shackles and handcuffs connected by a waist chain) for several hours. Hancock alleges that all of the restraint devices were too tight. He also claims that during restraint checks over the next several hours, defendant officers used excessive force on him by slamming into him with a defensive shield, twisting the restraints to cause him pain, stepping on his ankle restraints, and "stepp[ing]on his bare feet with their work-boots, with a grinding motion." *Id.* at 13.

Hancock filed this *Bivens* action in November of 2020 and submitted a Supplemental Complaint in May of 2021 concerning his claims against defendant Kelly. He seeks monetary damages. The defendants have filed motions to dismiss, or in the alternative, for summary judgment. Among other defenses, they argue that Hancock failed to exhaust his administrative remedies. Hancock has responded to their motions, making them ripe for consideration.[2]

---

[2] Some of the defendants have also filed a Reply, ECF No. 57, to Hancock's opposition brief. Although titled as a Reply, this filing is more properly titled as a Supplemental Motion for Summary Judgment, since it presents additional declarations and other documentation in support of the defendants' argument that Hancock failed to satisfy the exhaustion requirement in § 1997e(a). It is well established that summary judgment is inappropriate where a pro se plaintiff has not been advised of his right to file counter-affidavits or been warned that failure to do so might result in entry of summary judgment against him. *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975). The court notified Hancock of the defendants' dispositive motions, ECF Nos. 32 and 59, and warned him of possible judgment against him if he failed to respond to it. Hancock responded to these

II.   DISCUSSION.

A. Standard of Review.

The Federal Rules of Civil Procedure provide that "[i]f, on a motion [to dismiss] under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). In addressing the defendants' exhaustion defense, I must rely on evidence they submit outside the pleadings, namely, the declaration of the paralegal who has reviewed Hancock's administrative remedy history. Mem. Supp. Mot. Ex. 2, Spearen Decl., ECF No. 33-2. Accordingly, I will address the defendants' motions as under the summary judgment standard in Rule 56, rather than as motions to dismiss under Rule 12(b)(6).

A court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

> In considering a motion for summary judgment, the court is required to view the facts and draw reasonable inferences in a light most favorable

---

motions with a declaration under penalty of perjury. However, neither the court nor the defendants provided Hancock with a similar notice regarding the defendants' Reply with its additional evidence. Accordingly, I have not considered the evidence presented with the defendants' Reply in reaching my decision to grant summary judgment for the defendants on the ground of failure to exhaust administrative remedies.

> to the nonmoving party. The plaintiff is entitled to have the credibility of all his evidence presumed. The party seeking summary judgment has the initial burden to show absence of evidence to support the nonmoving party's case. The opposing party must demonstrate that a triable issue of fact exists; he may not rest upon mere allegations or denials. A mere scintilla of evidence supporting the case is insufficient.

*Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994).[3]

A pro se litigant's verified complaint or other verified submission must be considered as an affidavit and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991). "[U]nsupported speculation is not sufficient to defeat a summary judgment motion," however. *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 875 (4th Cir. 1992).

### B. Failure to Exhaust Administrative Remedies.

The Prison Litigation Reform Act, among other things, provides in 42 U.S.C. § 1997e(a) that a prisoner cannot bring a civil action concerning prison conditions until he has first exhausted available administrative remedies. This exhaustion requirement is "mandatory," *Ross v. Blake*, 578 U.S. 632, 638 (2016), and "applies to all inmate suits about prison life." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). To comply with § 1997e(a), an inmate must follow each step of the established grievance procedure that the facility provides to prisoners and meet all deadlines

---

[3] I have omitted internal quotation marks, alterations, and citations here and throughout this Opinion, unless otherwise noted.

within that procedure before filing his § 1983 action. *See Woodford v. Ngo*, 548 U.S. 81, 90-94 (2006).

The Federal Bureau of Prisons ("BOP") has established an Administrative Remedy Program, 28 C.F.R. § 542.10, et seq., through which an inmate may seek formal review of issues or complaints relating to confinement. Generally, a BOP inmate must first attempt to resolve his complaint informally according to procedures established by the facility warden. 28 C.F.R. § 542.13. Within twenty days after the circumstance about which the inmate complains, he must complete not only the initial informal step, but he must also submit a formal written complaint on the proper form — an "Administrative Remedy Request" ("BP-9") form. 28 C.F.R. § 542.14(a). The inmate should obtain the BP-9 form from the designated staff person and return the completed BP-9 form to that same individual (usually his correctional counselor). 28 C.F.R. § 542.14(c). An inmate may request an extension of the deadline to file his BP-9 if he shows a valid reason for the delay. 28 C.F.R. § 542.14(b).

Under exceptional circumstances, when the issue is sensitive or the inmate's safety or well-being would be placed in danger if the BP-9 became known at the institution where he is confined, the inmate may bypass submitting his BP-9 to institutional staff. Rather, when a BP-9 form addresses this sort of sensitive issue, the inmate may submit it directly to the appropriate Regional Director. 28 C.F.R.

§ 542.14(d)(1). "The inmate shall clearly mark 'Sensitive' upon the Request and explain, in writing, the reason for not submitting the Request at the institution." *Id.* If the Regional Director finds that a BP-9 submitted under this procedure does not qualify as sensitive, he will notify the inmate in writing that he should file a BP-9 at the institution under the normal procedure. *Id.* To allow the inmate to do so, the warden should grant a reasonable extension of the normal BP-9 deadline. *Id.*

The BOP administrative remedies procedure also provides for two levels of appeal to reviewing officials outside the prison facility where the inmate is confined. When the warden's response to the inmate's BP-9 is unfavorable, the inmate may appeal within twenty days to the Regional Director using a BP-10 form. 28 C.F.R. § 542.15. If the Regional Director's response is unfavorable, the inmate may appeal within thirty days to the General Counsel using a BP-11 form. *Id*. The inmate must complete all of the described steps to accomplish full exhaustion of BOP administrative remedies.

The defendants' evidence on summary judgment is that Hancock has not filed, or attempted to file, any administrative remedies about the events at issue in this lawsuit. The defendants bear the burden of proving the affirmative defense that Hancock failed to exhaust available administrative remedies regarding his claims before filing suit. *Jones v. Bock*, 549 U.S. 199, 216 (2007). They have done so.

Indeed, Hancock admits in his Complaint that he did not complete the administrative remedies procedure within the BOP before filing this lawsuit.

Hancock may yet escape summary judgment under § 1997e(a) if he states facts showing that the remedies under the established grievance procedure were not "available" to him. *Ross*, 578 U.S. at 643 (noting that circumstances making prison grievance procedures unavailable "will not often arise"); *Lebron v. Anders*, No. 7:20-cv-524, 2021 WL 4227770, at *4 (W.D. Va. Sept. 16, 2021) (plaintiff bears burden of proving administrative remedies were unavailable). Generally, "an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). An administrative remedy is considered unavailable when: (1) "it operates as a simple dead end — with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) it is "so opaque that it becomes, practically speaking, incapable of use"; or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross*, 578 U.S. at 643–44; *see also Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006) ("[W]hen prison officials prevent inmates from using the administrative process . . . the process that exists on paper becomes unavailable in reality.").

In the Complaint, Hancock alleges vaguely that he "has been denied forms to exhaust remedies, about these issues at U.S.P. Lee and [ ] at U.S.P. Thompson. Written request for grievance forms were given to Thomson staff, telling them they were for events at U.S.P. Lee. No forms were supplied." Compl. 17, ECF No. 1. Hancock also states that he sent emails to the "Unit Team Supervisor (Case Management Coordinator/C.M.C.) for grievance/BP-8 forms." *Id.* This officer replied that the United Team had been notified of the requests.

In a verified response to the defendants' summary judgment motion on exhaustion grounds, Hancock contends that his counselors at USP Lee made the administrative remedies procedure unavailable to him. ECF No. 51. He states that a few weeks after he arrived at USP Lee, he returned two "BP-8" forms (the informal resolution step of the USP Lee administrative remedies procedures) to his assigned counselor, Mr. Willis, who refused to log them. These forms complained about being served peanut butter that contained trans fats. Hancock claims that when he gave Willis the second of these BP-8 forms, Willis "used profanity telling [Hancock] not to submit anymore administrative remedy forms." Mot. Opp'n 22, ECF No. 51. Hancock asserts that the counselor's statement was a "direct order in a threatening fashion." *Id.* at 23. Hancock also allegedly learned shortly thereafter that "it is customary at USP Lee for staff to plant knives in cells of prisoners that use the administrative remedy" procedure. *Id.*

By the time officials transferred Hancock to the SHU, they had assigned him to Counselor Collins. No longer concerned about the threat by Counselor Willis, "on two separate occasions [Hancock] asked Ms. Collins for BP-8 (admin remedy) forms. She asked [him] what they were for and he told her. She never returned with the forms." *Id.* at 24. Hancock states that the likely reason Collins "refused to bring proper forms" for him is that USP Lee staff know Hancock as a "filer." *Id.*

After these two attempts to obtain proper remedy forms, Hancock contends that he "was forced to send his Administrative Remedy complaint, written on notebook paper, to a higher level FBOP Office outside of USP Lee, due to being denied 'Correct Forms.'" *Id.* at 25. Hancock admits that this remedy attempt concerned an alleged denial of medical care, related to his other pending lawsuit in this court.[4] In response, Dr. York advised Hancock to use proper administrative remedy forms in the future to allow officials to address his grievance issues at the facility before sending them to outside administrative officials. *Id.* (citing Mem. Supp. Mot. Ex. 1, Canfield Decl., Attach. D at 69, ECF No. 33-1). Hancock contends that Dr. York's response somehow establishes that administrative remedy forms were not available to Hancock in the SHU at USP Lee.

I cannot find that Hancock's evidence establishes that administrative remedies were unavailable to him at USP Lee. I will address each of his arguments in turn.

---

[4] *See Hancock v. Smith*, No. 7:20CV00225.

First, Hancock asserts that Willis' alleged threatening statement made administrative remedies unavailable to him while he was in the general population at USP Lee. I find no merit to this contention.

An inmate who seeks to excuse his failure to exhaust because of an official's alleged threats must state facts meeting both facets of the *Turner v. Burnside* test. *Lebron*, 2021 WL 4227770, at *5 (citing *Turner v. Burnside*, 541 F.3d 1077, 1085 (11th Cir. 2008) and other cases applying *Turner*). Specifically, the inmate must show: (1) subjectively, that "the threat actually did deter the plaintiff inmate from lodging a grievance or pursing a particular part of the process;" and (2) objectively, that "the threat is one that would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance or pursuing the part of the grievance process that the inmate failed to exhaust." *Turner*, 541 F.3d at 1085.

Even if Counselor Willis' alleged order or threat deterred Hancock from filing administrative remedy forms while he was in the general population, as Hancock alleges, the counselor's statement simply does not qualify as the type of official threat that would "deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance." *Id.* Hancock does not allege that Willis warned him not to file grievances about other, more substantive or personal matters. Nor does Hancock assert that the counselor threatened to harm Hancock in any way for requesting remedy forms or filing completed forms about any subject, including his safety

concerns over his cell mate. Hancock's self-serving interpretation of Willis's statement as a threat to harm Hancock, or to have a weapon planted in his cell, if he sought to pursue administrative remedies, is simply not a reasonable inference from the facts as Hancock himself alleges them. Hancock's mere speculation that Willis intended him harm is not sufficient to withstand the defendants' summary judgment motion on exhaustion grounds. Put another way, allegations of such vague comments by officials cannot constitute the type of intimidation that "thwart[s]" an inmate from using an administrative process so as to make it "unavailable" in reality. *Ross*, 578 U.S. at 644. *See also Knutson v. Hamilton*, No. 7:20-cv-00455, 2021 WL 4163981, at *4-5 (W.D. Va. Sept. 13, 2021) ("a general fear of 'retaliation' does not render administrative remedies unavailable'").

Second, Hancock contends that an inability to obtain proper forms in the SHU at USP Lee made the administrative remedy procedures unavailable to him. His evidence does not support this argument.

Hancock alleges that he was transferred to the SHU after the incident on March 30, 2020. By then, Collins was his counselor, so Hancock admits that he was no longer fearful of retaliation from Willis if he asked Collins for remedy forms. Yet, Hancock alleges that from March 30, 2020, until his transfer to USP Thomson

late that summer, he asked Collins for BP-8 forms on only two occasions.[5] Hancock does not state when he made these requests or indicate that he made any attempt to follow up with Collins when she did not provide him with remedy forms after a few days. He also does not explain why he did not make further requests for remedy forms. I cannot find that these allegations describe the unusual type of circumstance mentioned in *Ross* where prison officials' actions have thwarted an inmate's ability to utilize and exhaust administrative remedies so as to make those remedies unavailable. Moreover, because Hancock provides an insufficient factual basis to excuse his failure to file administrative remedies while he was still at USP Lee, within the procedure's deadlines, his alleged difficulties in obtaining proper forms at USP Thomson cannot overcome the defendants' exhaustion defense.

Third, Hancock contends that his notebook paper complaint about his medical care, mailed directly to outside BOP administrators in contradiction of the BOP remedy procedures to file proper remedy forms first at the prison, proves that officers at USP Lee thwarted his efforts to obtain and file proper administrative remedy forms.[6] I find no merit to this contention. This homemade remedy form and filing

---

[5] Court records in Hancock's other pending civil action, *Hancock v. Smith*, No. 7:20CV00225, indicate that he was transferred to USP Thomson in August 2020.

[6] In raising this argument, Hancock cites to his earlier lawsuit against the United States and prison officials related to events in a BOP facility in the Southern District of West Virginia; the unexhausted claim in that case arose under the Federal Tort Claims Act not *Bivens*, and the ultimate outcome of the case does not support Hancock's arguments

procedure prove only that Hancock tried to circumvent established administrative remedy procedures by inventing his own form and process. Such manufactured grievance measures do not comport with the exhaustion requirements under federal law. 42 U.S.C. § 1997e(a). *Woodford*, 548 U.S. at 90–94 (to comply with § 1997e(a), inmate must follow all steps of established grievance procedure before filing his civil rights action).

Finally, it is undisputed that Hancock never filed a sensitive administrative remedy directly to the appropriate Regional Director about his claims in this action. This procedure exists to allow an inmate to submit a remedy request without staff members at the prison facility being able to see the filing. 28 C.F.R. § 542.14(d)(1). If Hancock believed that Willis or Collins was attempting to block him from completing the administrative remedies procedure, he could have used this mechanism to complete the first step of the established remedy process and could then have moved on to the appeals built into the procedures. Yet, Hancock failed to do so. *See Knutson v. Hamilton*, No. 7:20-cv-00455, 2021 WL 388444, at *6 (W.D. Va. Feb. 3, 2021) (finding that the inmate's failure to file sensitive remedy request was further evidence his administrative remedies were not unavailable).

---

here. *Hancock v. Rickard*, No. 1:18-00024, 2019 WL 9047228, at *20 (S.D.W. Va. Oct. 25, 2019), *R. & R. adopted in part and rejected in part*, No. 1:18-00024, 2020 WL 1502859, at *7–8 (S.D.W. Va. Mar. 30, 2020).

## III. CONCLUSION.

For the stated reasons, I conclude that Hancock did not properly exhaust his administrative remedies before filing this civil action and that he has failed to present any disputed fact on which he could persuade a fact finder that those remedies were unavailable to him. Furthermore, I find it clear from the record that Hancock no longer has an available administrative remedy regarding the defendants' alleged constitutional violations in March and April 2020, the time period at issue in this lawsuit. Accordingly, I will grant the defendants' Motions for Summary Judgment on the ground that Hancock failed to exhaust his administrative remedies, pursuant to 42 U.S.C. § 1997e(a), and will dismiss with prejudice Hancock's claims under *Bivens*.

A separate Order will be entered herewith.

DATED: March 10, 2022

/s/  JAMES P. JONES
Senior United States District Judge